# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JAY JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BELLSOUTH TELECOMMUNICATIONS, INC., ) <br> ) <br> Defendant. ) | No. 3:09-CV-323 <br> (Phillips) |

## MEMORANDUM OPINION

Plaintiff, Jay Johnson, a former employee of defendant BellSouth Telecommunications, Inc., has brought a claim of retaliatory discharge under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, after he was fired for unsatisfactory job performance. In addition to suing BellSouth for retaliatory discharge, plaintiff alleges claims for negligent and intentional infliction of emotional distress arising from his termination. BellSouth has moved for summary judgment on all plaintiff's claims.

## I. Statement of Facts

Jay Johnson was hired by BellSouth as a Small Business Sales Associate in January 2006. As a Small Business Sales Associate, his primary responsibilities included customer service and sales, which were accomplished by consulting with customers to recommend and sell a variety of telecommunications products and/or services to meet the

customer's needs. When a small business customer called BellSouth, Johnson understood that he was expected to ask "discovery questions" to explore the customer's needs so that he could suggest products offered by BellSouth that would help them to maximize their profitability. Johnson was trained to utilize "appropriate sales techniques to encourage a good customer relationship and to enhance the buying experience."

All Sales Associates are required to meet or exceed individual sales objectives, as well as meet or exceed customer care commitments. The performance of Sales Associates is measured entirely by sales performance against targets that are based on quantities of phone lines, long distance, internet, cellular and other services ordered by customers. After an initial training and probationary period, Johnson was expected to achieve at least a 100% rating based on the various sales performance measures.

A rating less than 100% is considered by BellSouth to be less than satisfactory, and continued failure to reach the 100% expectation is grounds for disciplinary action up to and including dismissal. In addition to annual performance reviews, Sales Associates are given a "Report Card" showing their year to date performance rating on a monthly basis. Johnson and other Sales Associates are also provided with a document called the "Daily Dollar" throughout the month that allowed them to track their sales performance on a daily basis compared to the targets for the current month.

Johnson achieved a 90.57 score out of 100 towards his sales objectives in 2006, resulting in a "less than satisfactory" performance evaluation for the 2006 year. In

2

2007, he obtained a 98.53 score out of 100 towards his sales objectives. Johnson received an informal discussion from his Team Manager on February 7, 2008 for failing to meet his sales objectives, during which he was advised that further disciplinary action would be taken if he failed to improve his performance. As part of the informal discussion, Johnson was given a plan to improve his sales performance in February, March, and April 2008 to get him back on track to achieving a 100 score for the year. In additional to informal discussions, Johnson was coached by his Team Manager on several occasions on how to respond and consult with customers.

Johnson was issued a counseling entry for unsatisfactory performance, in which he was advised by his Team Manager that "he needed to improve his performance and maintain it at a satisfactory level." Johnson also received an informal discussion from his Team Manager on April 9, 2008 for failing to read the "parting shot" to confirm that he had satisfied the customer's needs. Johnson was given another action plan to improve his sales performance in April, May, June and July 2008 to get him back on track to achieving a 100 score for the year, as well as a Corrective Action Plan detailing activities to improve his sales performance.

On April 29, 2008, Johnson was given a written disciplinary action for misconduct for failing to call a supervisor or manager to approve the removal of services from customers' accounts, which caused him to have a performance score that was less than zero for the month. On May 6, 2008, Johnson's sales performance score for the month was a negative -5.8 out of 100, and he received a "warning" entry which stated that

3

his performance continued to be unsatisfactory, and that if improvement was not made and sustained, more severe disciplinary action could be taken, up to and including termination.

On June 3, 2008, Johnson was issued a letter in lieu of suspension for unsatisfactory performance which gave him a final opportunity to improve his sales performance to avoid further discipline. His sales performance did not improve, and by June 2008, his year to date sales performance score was 61.64 out of 100. Based on his ongoing and repeated failure to meet sales objectives, Todd Hliva, BellSouth's Branch Manager, made the decision to terminate Johnson's employment. Johnson was terminated on July 1, 2008 for unsatisfactory job performance.

Johnson alleges that during the course of his employment with BellSouth, he was instructed by upper management to engage in what he believed to be unethical practices on behalf of the defendant. Specifically, these complaints included adding services and charging customers for services that they did not request. Johnson states that during telephone calls with customers, the Sales Associates were trained to ask "discovery questions" to ascertain customer needs. Johnson received training for three months and was encouraged to use BellSouth's sales techniques and encourage good customer relationships. However, Johnson alleges that when he came to the sales floor, he was told by management to forget everything he learned and to use unethical sales practices, including the use of sales scripts that were used to sell items without the customer's knowledge. Johnson alleges these sales practices were necessary to reach the aggressive sales targets set by BellSouth.

4

Johnson admits that he did not meet his 2006 and 2007 sales targets, but asserts this was due to his unwillingness to engage in illegal, unethical behavior. He states that he was never given any discipline for those years. Moreover, he states there were several other employees that did not meet their sales targets but maintained employment at BellSouth.

During his employment with BellSouth, Johnson expressed his concerns about the unethical/illegal behavior going on in his department. He addressed these concerns with several people in the department including Todd Hliva, Manager; Crystal Manning, Team Manager; and Wanda Watkins, Branch Manager. Johnson states that despite expressing his concerns to management, the illegal/unethical behavior continued.

Johnson sent a letter on January 19, 2008 to internal attorneys and the Board of Directors of BellSouth bringing to their attention the illegal/unethical sales practices that had not been addressed. Before sending this letter, Johnson told Crystal Manning, his Team Manager, that he was going to send the letter. Manning warned Johnson that he would be retaliated against for sending such a letter.

Johnson states that he was never given any discipline as a result of low sales until February 2008, after the letter was sent to corporate regarding unethical and illegal sales practices. On February 7, 2008, Johnson was given an Informal Discussion and a plan to improve his sales performance in February, March and April 2008. On April 9, 2008, Johnson was put on a Corrective Action Plan (CAP), which was scheduled to end

5

on July 31, 2008. During the CAP, Johnson alleges he showed significant improvement. On April 29, 2008, Johnson received a written disciplinary action for alleged misconduct for failing to call a supervisor or manager to approve the removal of services from customer accounts, which caused him to have a performance score that was less than zero for the month. Johnson alleges this discipline was issued even though the customer specifically asked for the services to be removed.

On June 3, 2008, Johnson was issued a letter in lieu of suspension giving him a final opportunity to improve his sales performance in order to avoid further discipline. Johnson alleges he was not allowed to finish his CAP and was instead fired on July 1, 2008. Johnson alleges similarly situated employees that were not achieving the expected sales objectives received several letters in lieu of suspension and were not terminated by BellSouth.

BellSouth responds that Johnson never sent a copy of his January 2008 letter to Todd Hliva and that Hliva was not aware of the letter, or that Johnson had otherwise reported to anyone at BellSouth that Sales Associates were asked to engage in any illegal activity.

BellSouth has moved for summary judgment on plaintiff's claims, stating that plaintiff received less than satisfactory sales performance ratings in the first two years of his employment in 2006 and 2007, and received formal and informal counseling for sales performance deficiencies and misconduct in February, April, May and June 2008. Plaintiff

was aware of the consequences of his continued failure to improve and after repeated opportunities to improve, he was terminated on July 1, 2008 for unsatisfactory performance. BellSouth further states that plaintiff's claims for negligent and intentional infliction of emotional distress must be dismissed because they are based entirely on his termination; he has not alleged that BellSouth engaged in any outrageous conduct; and he has not offered any proof that he suffered severe or serious emotional distress.

Plaintiff has responded in opposition, stating that genuine issues of material fact exist as to BellSouth's motive for firing him, and that defendant is not entitled to judgment as a matter of law.

## II. Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute

7

such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports,* 253 F.3d at 907.

### III.  Analysis

**A.  Tennessee Public Protection Act Claim**

Johnson avers that BellSouth violated the Tennessee Public Protection Act (TPPA) when it terminated his employment. The TPPA, Tenn. Code Ann. §50-1-304, provides in pertinent part:

> (b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
>
> . . .
>
> (d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

The provisions of this statute create a narrowly crafted exception to the long-established common law employment-at-will doctrine, which provides generally that "an employment contract for an indefinite term is terminable at the will of either the employer or the

8

employee for any cause or for no cause." *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 535 (Tenn. 2002). "Employment-at-will is the fundamental principle controlling the relationship between employers and employees; however, even under the common law, an employee is protected from discharge in retaliation for attempting to exercise a statutory or constitutional right, or in violation of a well-defined public policy." *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997).

A plaintiff asserting a TPPA claim has the burden of proving the following four elements to prevail on his statutory retaliatory discharge claim: (1) the plaintiff was an employee of the defendant; (2) the plaintiff refused to participate in or remain silent about illegal activity; (3) the defendant employer discharged or terminated the plaintiff's employment; and (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity. *See Voss v. Shelter Mut. Ins. Co.,* 958 S.W.2d 342, 344 (Tenn.Ct.App. 1997).

In *Guy*, the Tennessee Supreme Court noted that "under the Act, the plaintiff must demonstrate an exclusive causal relationship between his whistleblowing activity and his subsequent discharge." *Guy*, 79 S.W.3d at 535; *see also Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn.Ct.App. 2007) (observing that the primary difference between the common law and statutory retaliatory discharge claims is that, to benefit from statutory protection, an employee must demonstrate that his refusal was the sole reason for his discharge); *Darnell v. A+ Homecare, Inc.,* 1999 WL 346225 (Tenn.Ct.App. Jun. 2, 1999) (The General Assembly's choice of the term "solely" means that an employee can prevail

9

with a Tenn. Code Ann. § 50-1-304 claim only if he can prove that his refusal to participate in or to remain silent about illegal activities was the only reason for the termination).

In analyzing statutory retaliatory discharge claims, Tennessee courts follow the familiar burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn.Ct.App. 1999); *see also Provonsha v. Students Taking a Right Stand, Inc.*, 2007 WL 423918 (Tenn.Ct.App. Dec. 3, 2007). The plaintiff faces the initial burden of showing a *prima facie* case of retaliatory discharge, after which the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its decision. *Smith*, 2 S.W.3d at 200. Then, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual. *Id.* The plaintiff may do this by showing (1) that the proffered reason has no basis in fact, (2) that the proffered reason did not actually motivate his discharge, or (3) that the reason was insufficient to motivate his discharge. *Provonsha*, 2007 WL 423918.

To successfully shift the burden of production to the nonmoving party at the summary judgment stage, BellSouth must either produce or identify evidence that affirmatively negates an essential element of Johnson's claim or shows that Johnson cannot prove an essential element of the claim at trial. BellSouth challenges Johnson's ability to establish the "sole causation" element of his claim. At trial, plaintiff must show that BellSouth terminated his employment solely for his refusal to participate in or remain silent about the alleged illegal activity. The court has carefully reviewed the evidence in the record as outlined above in the light most favorable to the plaintiff, and concludes that

BellSouth has produced evidence that Johnson cannot establish the essential element of "sole causation." The undisputed evidence in the record establishes valid and legitimate reasons for BellSouth to have terminated Johnson's employment for failure to meet his sales objectives. Thus, BellSouth has successfully shifted the burden to Johnson to demonstrate a genuine issue of material fact regarding whether the decision to terminate his employment was solely due to his protected whistleblowing activity.

Johnson argues that he did not meet his sales objectives in 2006 or 2007, but was not disciplined during this time. Johnson asserts that it was only after his January 2008 letter that he was disciplined by management for not meeting his sales objectives. Johnson states that he met with each manager to discuss his concerns with the unethical procedures and felt that his concerns were not being taken seriously. He specifically met with Todd Hliva and Crystal Manning to discuss the unethical behavior of adding services to customer's accounts without their permission prior to sending his January 2008 letter to BellSouth's internal attorneys. Johnson argues that multiple other employees were not meeting their sales objectives and given numerous chances to improve. Lisa Born and Stephen Holiway had multiple letters in lieu of suspension issued to them and were not terminated. Amber Johnson was allowed a promotion to Trainer and eventually had her "less than satisfactory" entries removed by her manager. Johnson argues that his low sales numbers were used as an excuse or pretext for his termination. Johnson further argues that BellSouth's assertion that Hliva was not aware of the January 2008 letter is highly suspect given the proximity of time between the letter and his termination.

Proximity in time between the protected activity and the termination is not sufficient to establish a causal relationship. *Mason,* 942 S.W.2d at 473. To meet his burden, plaintiff must show that all of the relevant aspects of his employment situation were nearly identical to those of the non-protected employees' situations. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Moreover, to be deemed "similarly situated," the individuals must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Johnson has no other evidence to establish that his termination for poor performance was a pretext for retaliation. Johnson has not offered any specific evidence that the allegedly similarly-situated individuals had a nearly identical record of poor performance that warranted termination. Hliva testified that Born and Holiway had shown sufficient improvement to allow them to remain employed, while plaintiff had not. Amber Johnson was disciplined for attendance issues and poor sales performance; however, her sales performance was not consistently below the sales targets for three years, while Johnson's sales performance had declined to a low of 61.64 out of 100 at the time of his termination. Plaintiff has not shown that these individuals consistently failed to meet their sales objectives over a three year period, nor does he have any other evidence suggesting that BellSouth's stated reason for ending his employment did not actually cause his discharge.

Plaintiff also claims that prior to sending the January 2008 letter, his Team Manager, Manning, advised him that if he did that he would be retaliated against. Even assuming that Manning made the statement, it would not show that plaintiff's termination was pretextual because both Manning Hliva testified that Manning played no role in Hliva's decision to terminate plaintiff. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating discriminatory animus).

By requiring a plaintiff employee to show that he was "discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities, the Tennessee legislature has chosen to enact a stringent standard and set the bar high for recovery under a retaliatory discharge claim pursuant to the TPPA. Even if Johnson were able to make out a *prima facie* claim, he has failed to rebut BellSouth's proffered legitimate reason for firing him. BellSouth claims that it placed Johnson on a Correction Action Plan because of his faltering sales. Although Johnson argues that this was a pretext for retaliation for his January 2008 letter, he does not dispute that his sales were, in fact, falling. Johnson's sales performance in 2008 (55.71 in January 2008 and 61.64 year to date at the time of his termination) was dramatically worse than his scores in 2006 and 2007, which were 90.57 and 98.53 respectively. Certainly declining sales provide a legitimate reason to fire a salesman.

Moreover, even if Johnson's inability to meet his sales objectives was not the sole reason for his discharge, Johnson cannot show that the individual that made the decision to terminate his employment, Todd Hliva, was aware that Johnson had engaged in protected activity. Hliva could not have retaliated against Johnson for actions that Hliva was not aware of at the time he made the termination decision. The evidence shows that Hliva made the decision to terminate Johnson based on his ongoing poor sales performance, and without any knowledge of Johnson's January 2008 letter to BellSouth's in-house lawyers. Johnson admits that he never sent the letter to Hliva, or that he has any evidence that Hliva was made aware of the letter by anyone else. Johnson has failed to establish a retaliatory intent because there was no evidence that the letter was ever shared with Hliva. *See Profitt v. Metropolitan Govt of Nashville*, 150 Fed.Appx. 439, 443 (6th Cir. Sept. 29, 2005) (plaintiff's contentions that others in the organization *may* have shared the protected activity with the decisionmaker were "too speculative to support the inference that the decisionmaker knew of her protected activity when she terminated her); *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (The inferences plaintiff sought to draw from evidence were "akin to flights of fancy, speculations, hunches, intuitions or rumors about matters remote from personal experience" and were insufficient to rebut that the decisionmakers had no knowledge of the plaintiff's protected activity); *Iqbal v. Pinnacle Airlines Inc.,* 2011 WL 2838114 at *11 (W.D.Tenn. Jul. 14, 2011) (plaintiff failed to come forward with any evidence that the relevant decisionmakers knew of his protected activity, even if others within the company had knowledge, he failed to establish a prima facie case for retaliation).

In summary, even viewing all the evidence in the light favorable to plaintiff, a reasonable jury could not conclude that the sole reason for his termination was his refusal to participate in or remain silent about the alleged illegal activities. Accordingly, the court finds that BellSouth is entitled to judgment as a matter of law on plaintiff's claim for retaliatory discharge under the Tennessee Public Protection Act.

**B. Intentional Infliction of Emotional Distress Claim**

The court next addresses Johnson's claim for intentional infliction of emotional distress (outrageous conduct). Under Tennessee law, a plaintiff must establish three elements to bring a claim for outrageous conduct: (1) the conduct complained of must be intentional or reckless, (2) the conduct must be so outrageous that it is not tolerated by civilized society, and (3) the conduct complained of must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The Supreme Court of Tennessee has stated that to determine whether particular conduct is so intolerable as to be tortious, the high threshold standard described in the Restatement (Second) of Torts is applied. *Id.* at 622-23.

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damage for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average

15

>member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous."

*Id.* at 623 (quoting *Medlin v. Allied Ins. Co.*, 398 S.W.2d 270, 274 (1966) (quoting Restatement (Second) of Torts § 46 comment (d)).

Johnson bases his intentional infliction of emotional distress claim entirely on the termination of his employment from BellSouth. However, even assuming that Johnson was disciplined and terminated at least in part because of his complaints of unethical sales practices, the court finds that BellSouth's conduct in allegedly discharging Johnson in retaliation for his protected activity fails to constitute conduct so outrageous as to be considered tortious. BellSouth's alleged conduct differs markedly from situations where the Tennessee courts have found extreme and outrageous conduct to be present. *See e.g., Dunn v. Moto Photo*, 828 S.W.2d 747 (Tenn.Ct.App. 1991) (holding that defendants committed a "gross, inexcusable and outrageous breach of a contract when they accepted plaintiff's film for developing and printing, and told plaintiff her film could not be developed when in fact they developed the film and retained one of the prints for display to friends who desired to see a "wild picture"); *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn.Ct.App. 1981) (holding that summary judgment was inappropriate on plaintiff's claim of intentional infliction of emotional distress when, after examining a nineteen month old baby found dead in its crib, the county medical examiner told the parents the details of his findings indicating the child's sexual abuse and murder, despite knowing that the mother had experienced a nervous breakdown); *Johnson v. Woman's Hosp.,* 527 S.W.2d 133 (Tenn.Ct.App. 1975) (affirming the jury's finding that defendant engaged in outrageous conduct when he

16

Case 3:09-cv-00323   Document 22   Filed 03/14/12   Page 16 of 18   PageID #: 671

preserved the body of a premature stillborn infant in a jar of formaldehyde and displayed the jar to the mother). In contrast, BellSouth's conduct in allegedly discharging Johnson because of his complaints regarding unethical sales practices does not rise to the level of "atrocious" or "utterly intolerable" conduct. Johnson has provided no authority, and the court has found none, in which the Tennessee courts have recognized that an employee's termination satisfies the requisite elements for outrageous conduct. Nor has the Sixth Circuit, interpreting Tennessee law, found such a cause of action. *See Godfredson v. Hess & Clark Inc.,* 173 F.3d 365, 376 (6th Cir. 1999) ("An employee's termination, even if based on discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress").

Equally determinative, the record is devoid of any evidence of the severe metal injury which must be caused by the defendant's outrageous conduct for recovery for intentional infliction of emotions distress. The Tennessee Supreme Court has observed "some degree of transient and trivial emotional distress is a part of the price of living among people." *Miller v. Willbanks*, 8 S.W.3d 607, 615 n.4. Thus, recovery for intentional infliction of emotional distress is limited to mental injury which is "so severe that no reasonable person would be expected to endure it." *Id.* Accordingly, because Johnson has failed to show that BellSouth's conduct in terminating his employment meets the definition of "outrageous conduct," and because he has failed to show any severe mental injury, the

17

court finds that BellSouth is entitled to judgment as a matter of law on plaintiff's claim of intentional infliction of emotional distress.

**Negligent Infliction of Emotional Distress**

BellSouth has moved for summary judgment on plaintiff's claim for negligent infliction of emotional distress stating that BellSouth did not breach any duty owed to plaintiff by terminating his employment and plaintiff has not offered any evidence supporting his alleged emotional distress.

In his response, plaintiff does not address, and therefore apparently concedes, that his negligent infliction of emotional distress claim should be dismissed. Accordingly, the court finds that BellSouth is entitled to judgment as a matter of law on plaintiff's claim for negligent infliction of emotional distress.

## IV. Conclusion

For the reasons stated above, BellSouth's motion for summary judgment [Doc. 14] is **GRANTED**, whereby this action is **DISMISSED** in its entirety. The trial scheduled for May 1, 2012 is **CANCELLED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge